UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Susanna Grimaldo, *Plaintiff*, v. Illinois Department of Human Services, *Defendant*. | No. 20 CV 7775 <br> Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Susanna Grimaldo filed suit *pro se* against her former employer, the Illinois Department of Human Services, for race and national origin discrimination in violation of Title VII of the Civil Rights Act. IDHS moved for summary judgment. Because Grimaldo has presented no evidence that would allow a reasonable jury to find in her favor, the Court grants the motion.

**I.    Local Rule 56.1**

"On summary judgment, the Court limits its analysis of the facts to the evidence that is presented in the parties' Local Rule 56.1 statements." *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 697 (N.D. Ill. 2015). The statements serve a valuable purpose: they help the Court in "organizing the evidence and identifying disputed facts." *Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). "To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." L.R. 56.1(e)(3).

1

Any party, including a *pro se* litigant, who fails to comply with Local Rule 56.1 does so at their own peril. *Wilson v. Kautex, Inc.*, 371 Fed. App'x 663, 664 (7th Cir. 2010) ("strictly enforcing Local Rule 56.1 was well within the district court's discretion, even though [employee] is a pro se litigant" (cleaned up)); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("even pro se litigants must follow procedural rules"); *Parker v. Fern*, 2024 WL 1116092, at *2 (N.D. Ill. Mar. 14, 2024) ("It is well-settled that a plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules.").

Here, IDHS filed a Rule 56.1 statement, and as required by Rule 56.2, served Grimaldo with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment." [Dkts. 83, 84.] This filing explains what a motion for summary judgment is and what steps Grimaldo needed to take to respond to the motion. Notwithstanding these instructions, Grimaldo failed to file any response to the motion or to the Rule 56.1 statement. The Court, on its own motion, extended the deadline for Grimaldo to respond to October 29, 2024, advising her in a minute order that the Court would rule on the motion without the benefit of her position if no response was filed by that date. [Dkt. 93.] Again, nothing was filed. Consequently, the Court takes all its facts from IDHS's filing and deems them admitted to the extent they are supported by evidence in the record. L.R. 56.1(e)(3).[1]

---

[1] While the facts presented in the Rule 56.1 Statement are undisputed, this does not absolve the Court of its responsibility to determine whether IDHS has "show[n] that summary judgment [is] proper given the undisputed facts, with those facts taken as usual in the light most favorable to the nonmovant." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (citing *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011) (noting that

**II.     Background**

IDHS is a department of the State of Illinois that operates the Chicago Read Mental Health Center ("Chicago Read") located in Chicago. Grimaldo, who is Mexican-American, worked for the state of Illinois beginning in 2011. In June 2015, Grimaldo worked for the Public Aid department as a Human Service Caseworker. She later became involved in IDHS's career mobility program called "Upward Mobility," which is designed to allow state employees to advance to more challenging, higher paying positions.

On June 1, 2018, Grimaldo was promoted to a probationary Social Worker II position at Chicago Read, which is an inpatient psychiatric facility that provides care for adult patients with serious mental illness. [*Id.* at ¶10–11.] Chicago Read provides acute and extended care to patients, and houses individuals who are deaf and hard of hearing. *Id.*

Denise Blumenthal was Grimaldo's supervisor and evaluator. [Dkt. 83 at ¶ 14.] As a Social Worker II, Grimaldo was required to complete comprehensive written documentation for patients on her caseload that would be included in each patient's medical records. [*Id.* at ¶12.] According to Blumenthal, the patient documentation is "legally required and constitutes a legal record"; "accurate and clear patient documentation" is of paramount importance to "inform later decisions regarding patient care." *Id.* Documentation that is not accurate or complete can "place patients

---

summary judgment may not be granted against the nonmovant when she fails to file a response "as some kind of sanction")).

3

in danger, affect the outcome of legal proceedings, and expose the facility to potential liability." *Id.*

As a probationary Social Worker II, Grimaldo received two formal evaluations. For the first evaluation on August 9, 2018, Blumenthal related that Grimaldo did not meet any of her work objectives and was rated "Needs Improvement" in all evaluation areas except "initiative" and "human relations." [Dkt. 83-1 at 61.] Blumenthal described Grimaldo's written work product as "disjointed or not understandable," and explained that Grimaldo was:

> gravely lacking in knowledge of how to understand or treat the mentally ill. For instance, on an early progress note about a patient who was admitted following a suicide attempt, she incorrectly wrote that the patient had [ ] postpartum depression (the patient had never had a child). Of equal concern, her writing is not sufficiently articulate to clearly communicate ideas or treatment options that are coherent. This presents a situation that is possibly dangerous because her notes might miscommunicate about patient care. Additionally, progress notes and the Treatment Plan are legal documents. Due to her deficits, all her written work has to be reviewed and then re-written by her supervisor before it can be submitted in the chart.

[Dkt. 83-1 at 62.] Blumenthal attached examples of Grimaldo's work product to the evaluation. [*Id.* at 78-82] Grimaldo submitted a written response to her evaluation, objecting to several of Blumenthal's criticisms. [Dkt. 83-1 at 65-68.]

For the second evaluation on September 4, 2018, Blumenthal found that Grimaldo did not meet any of the objectives that were included in the first evaluation and rated her performance as "Needs Improvement" in all areas except "initiative" and "human relations." [*Id.* at 72.] In the comments section, Blumenthal wrote "[u]nfortunately, improvement in her ability to write has not progressed sufficiently with my significant level of supervisory oversight. Her writing skills do not support

4

clear, coherent, and grammatically correct reporting. I have had to continue to provide continuous oversight of reviewing and rewriting her documentation in order to make them appropriate for medical chart submission." [*Id.* at 73.] Blumenthal again attached examples of Grimaldo's written work and the corrections her work required. [*Id.* at 90-92.]

On September 4, 2018, Blumenthal wrote a memo to Chicago Read's head administrator relaying that Blumenthal did not believe she could certify Grimaldo for the position of Social Worker II at the completion of her probationary period. Blumenthal cited, among other concerns, Grimaldo's poor writing, unsatisfactory or unexplained overtime requests, and delinquent charting following patient chart reviews. [Dkt. 83-1 at 106-109.] Blumenthal sent a similar letter to the Director of Central Management Services for IDHS later in the month of September, again explaining that Blumenthal could not certify Grimaldo to continue as a Social Worker II. [Dkt. 83-1 at 153.] Grimaldo was demoted effective October 1, 2018 to her prior position as a caseworker. [Dkt. 83-1 at 12.]

Grimaldo initiated this lawsuit *pro se* by filing a copy of her EEOC right to sue letter on the docket. [Dkt. 1.] She eventually filed a complaint, which IDHS moved to dismiss. The Court concluded that Grimaldo's complaint stated a claim for Title VII discrimination on the basis of national origin and race, but it dismissed her 42 U.S.C. § 1983 claim and her Title VII claims based on color. [Dkt. 27.] IDHS now moves for summary judgment.

5

**III.  Legal Standard**

Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) (quoting *Schacht v. Wis. Dept' of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). A party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

**IV.  Analysis**

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Put differently, "if changing the employee's" race or other protected characteristic "would have yielded a different choice by the employer," then "a statutory violation has occurred." *Bostock v. Clayton Cty. Ga.*, 140 S. Ct. 1731, 1741 (2020).

A plaintiff may use either the burden-shifting method under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or the holistic method under *Ortiz v. Werner Enters., Inc.,* 834 F.3d 760, 765 (7th Cir. 2016) to establish a Title VII claim. Under the *McDonnell Douglas* burden shifting framework, the plaintiff has the

"initial burden to establish a prima facie case of discrimination" by showing that (1) she is a member of a protected class; (2) she was meeting his employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside her protected class were treated more favorably. *Wince v. CBRE, Inc.*, 66 F.4th 1033, 1040 (7th Cir. 2023).

Grimaldo is a member of a protected class because she is Mexican-American, and she suffered an adverse employment action because she was demoted from the Social Worker II role effective October 1, 2018.[2] *Hackett v. City of South Bend*, 956 F.3d 504, 508 (7th Cir. 2020) ("Materially adverse actions include termination, demotion accompanied by a decrease in pay, or a material loss of benefits or responsibilities, but do not include 'everything that makes an employee unhappy.'") The sole question for the Court then is "whether the evidence would permit a reasonable factfinder to conclude that" Grimaldo's race or national origin caused the adverse employment action. *Wince*, 66 F.4th at 1040.

There can be no dispute Grimaldo did not meet IDHS's legitimate job expectations. "[W]hen a district court evaluates the question of whether an employee was meeting an employer's legitimate employment expectations, the issue is … whether the employee was performing well at the time of [the adverse action]." *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) (cleaned up). In analyzing an employer's stated evaluation of those expectations, "[t]he question is not

---

[2] The Court assumes Grimaldo's demotion was also accompanied by a decrease in pay.

whether the ratings were right but whether the employer's description of its reasons is honest." *Gustovich v. AT & T Commc'ns, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992).

Here, IDHS thoroughly documented Grimaldo's performance failures in the Social Worker II role. Both of Blumenthal's performance evaluations pointed to several key deficiencies, most notably Grimaldo's unsatisfactory written work, including with citations to specific examples of the poor quality of her submissions. Blumenthal also explained how Grimaldo's poor work product potentially put patients at risk and required others (primarily Blumenthal) to rewrite the information to ensure it was accurate and reliable. Simply put, Grimaldo's performance is similar to the plaintiff in *Igasaki v. Illinois Department of Financial & Professional Regulation*: her "performance was at best, lackluster, and at worst, unacceptable." 988 F.3d 948, 958 (7th Cir. 2021). The decision to demote her then was not based on any consideration of her protected characteristics, but rather on her continued deficiencies around core skills required for good patient social workers. Even when the evidence is viewed charitably in her favor, no jury could reasonably find otherwise.

Grimaldo likewise presents no evidence establishing that there were any "similarly situated employees" outside her class who were treated better than her, so she cannot establish a *prima facie* case of race or national origin discrimination for that reason either.

Even if Grimaldo could establish a *prima facie* case under *McDonnell Douglas*, the Court would need to assess whether her demotion was pretextual. This overlaps

8

with the *Ortiz* framework. Under *Ortiz*, the Court looks at all of the evidence together and asks simply "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [membership in a protected class] . . . caused the discharge or other adverse employment action" at issue. *Id.*; *see also Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755 at 760 (7th Cir. 2022) (the court assesses the evidence as a whole, rather than asking whether any particular piece of evidence proves the case by itself). *Ortiz* holds that "all evidence belongs in a single pile and must be evaluated as a whole." 834 F.3d at 766.

Nothing on this record constitutes sufficient evidence of race or national origin discrimination; even in a pile, it does not amount to evidence from which a jury could reasonably conclude that any alleged discrimination was because of membership in a protected class. Because Grimaldo has failed to raise any triable issue of fact, IDHS is entitled to summary judgment.

V. **Conclusion**

For the foregoing reasons, IDHS's motion for summary judgment is granted. The clerk is also directed to terminate Defendant Denise Blumenthal for the reasons given in the Court's prior order. Dkt. 27 at 8-9; *Robertson v. Dept. of Health Servs.*, 949 F.3d 371, 374 (7th Cir. 2020) ("Title VII authorizes suit only against an employer as an entity, not against individuals.")

Enter: 20 CV 7775
Date: October 31, 2024

_____
Lindsay C. Jenkins
United States District Judge